```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY

CHARLES S. HOTTENSTEIN,         :
Administrator for the Estate    :   HONORABLE JOSEPH E. IRENAS
of Tracy Hottenstein;           :   CIVIL ACTION NO. 11-740 (JEI/JS)
CHARLES S. HOTTENSTEIN; and     :
ELIZABETH K. HOTTENSTEIN,       :
                                :
          Plaintiffs,           :         OPINION
                                :
     v.                         :
                                :
CITY OF SEAL ISLE CITY;         :
et al.,                         :
                                :
          Defendants.           :
```

**APPEARANCES:**

THE WESCOTT LAW FIRM, P.C.
By:  Lyanne B. Wescott, Esq.
239 South Camac Street
Philadelphia, Pennsylvania 19107
          Counsel for Plaintiff

POWELL, BIRTCHMEIER,& POWELL, P.C.
By:  James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
          Counsel for Defendants Sea Isle City, Harold Boyer,
          Thomas McQuillen, and Vincent Haugh

FOX ROTHSCHILD, L.L.P.
By:  Eric M. Wood, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
          Counsel for Defendants Atlantic Regional Medical Center,
          Atlanticare MICU Medics at Base 3, and Atlantic City
          Medical Center

BLUMBURG AND LINDER, L.L.C.
By:  Jay J. Blumburg, Esq.
158 Delaware Street
P.O. Box 68
Woodbury, New Jersey 08096
          Counsel for Defendant Zaki Khebzou

```
CAMACHO MAURO MULHOLLAND, LLP
By:  Christopher C. Mauro, Esq.
350 Fifth Avenue, Suite 5101
New York, New York 10118
          Counsel for Defendants Landis Thirty Nine, Inc., Jersey
          Shore Properties, LLC, Michael Roberts, Ralph Pasceri,
          and Joseph Roberts

MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS
By:  Stephen Ledva, Jr., Esq.
2070 Springdale Road, Suite 400
Cherry Hill, New Jersey 08003
          Counsel for Defendants Bennett Enterprises, Inc., Paul
          Baldini, and James J. Bennett

PRUTTING & LOMBARDI ESQS.
By:  Marilou Lombardi, Esq.
701 South White Horse Pike
Audubon, New Jersey 08106
          Counsel for Defendants Mark Lloyd and Patricia Lloyd

WHITE, FLEISCHNER, & FINO, L.L.P.
By:  Brian Michael Thon, Esq.
2137 Route 35
Holmdel Corporate Plaza
Holmdel, New Jersey 07733
          Counsel for Defendant Michael Miloscia
```

**IRENAS**, Senior District Judge:

This wrongful death / survivorship suit arises out of the untimely and tragic death of Tracy Hottenstein.[1]  Presently before the Court is the Motion to Dismiss filed by Defendants Bennett Enterprises, Inc., and James J. Bennett.  For the reasons stated herein, James Bennett's Motion will be granted, and Bennett Enterprises' Motion will be granted in part and denied in part.

---

[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

**I.**

Sometime after 2:15 a.m. on February, 15, 2009, in Sea Isle City, Tracy Hottenstein, who was intoxicated at the time, fell off a public dock into the ocean below. The Complaint avers that the weather was 35 degrees Fahrenheit and windy. Several hours later, Tracy was discovered unresponsive on the ground near the dock. After a series of events not directly relevant to the instant Motion, she died.

Tracy was visiting Sea Isle City for the annual "Polar Bear Plunge," an event which the Complaint alleges is intended to "benefit the town economy and allow local businesses to make money in the winter season from the thousands of visitors expected." (Compl. ¶ 29) However, Tracy did not participate in the organized plunge into the Atlantic Ocean. She only came to "attend[] the festivities," including "visiting the local bars" with her friends. (Id. ¶ 38)[2]

According to the Complaint, Tracy visited three bars over the course of several hours on February 14, 2009. She first visited the Springfield Inn. (Compl. ¶ 39) The Complaint does not state whether Tracy consumed any alcohol while there, or approximately how long she stayed.

---

[2] The Complaint asserts that Tracy was 35 years old. (Compl. ¶ 36)

Next Tracy visited the "LaCosta Lounge" which is apparently the trade name of moving Defendant Bennett Enterprises, Inc., allegedly "owned in whole or in part by and / or operated by [D]efendants Paul Baldini and James J. Bennett." (Compl. ¶ 17)[3] The Complaint alleges that Tracy "and several friends were served alcoholic beverages at the bar. [Tracy] was served even though she was visibly intoxicated." (Id. ¶ 40)

Tracy eventually left LaCosta Lounge and went to Ocean Drive bar, where she was allegedly served alcohol "while in a visibly intoxicated state." (Compl. ¶ 43)

Later, Tracy and a friend, Michael Miloscia, joined Mark and Patti Lloyd at the LLoyd's home for dinner where Tracy was allegedly served more alcohol. (Compl. ¶ 43)  After dinner, Tracy and Michael returned to Ocean Drive bar where Tracy was allegedly served more alcohol. (Compl. ¶¶ 45, 46)

The Complaint avers what happened next:

[v]ideo shows that [Tracy] without any outdoor clothing on, followed Miloscia out of the Ocean Drive bar at or about 2:15 a.m. on February 15, 2009. . . . Miloscia at some point abandoned [Tracy] . . . . [Tracy] in her intoxicated state[,] wandered to the dark, dangerous public docks from the Ocean Drive bar, fell off into the dark icy water and struggled out to the location she was found the morning of February 15, 2009.

(Compl. ¶¶ 60-62)

The Complaint alleges the following claims against the moving

---

[3] Upon consent of the parties, this Court entered an order dismissing Paul Baldini from this suit on June 6, 2011.

4

Defendants: (1) negligence; (2) negligent hiring, training and supervising of personnel; (3) "vicarious liability and / or actual or apparent agency"; (4) negligent infliction of emotional distress upon Plaintiffs (Tracy's parents); (5) a survival claim; (6) wrongful death; (7) violation of New Jersey's Licenced Alcoholic Beverage Server Fair Liability Act, N.J.S.A. 2A:22A-1 et seq. (the "Dram Shop Act"); (8) a "wrongful death and survival action pursuant to [42] U.S.C. § 1983"; (9) a "state created danger [claim] pursuant to [42] U.S.C. § 1983"; (10) a claim pursuant to New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 et seq.

Defendants Bennett Enterprises, Inc., and James J. Bennett presently move to dismiss all claims against them pursuant to Fed. R. Civ. P. 12(b)(6).

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231

(3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions.  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible.  *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.

Before addressing the principal issue raised by the instant Motion-- the scope of the Dram Shop Act's "exclusive civil remedy" provision, N.J.S.A. 2A:22A-4-- the Court first addresses Defendant James Bennett's argument that he, personally, cannot be held liable for any of the claims asserted in the Complaint.

### A.

Individual Defendant James Bennett moves to dismiss all claims against him, arguing that he cannot have personal liability for the alleged torts of his incorporated business, Bennett Enterprises, Inc.  The Court agrees.

Bennett correctly asserts that there are no allegations

warranting piercing the corporate veil of Bennett Enterprises, Inc. New Jersey recognizes the "the fundamental propositions that a corporation is a separate entity from its shareholders, and that a primary reason for incorporation is the insulation of shareholders from the liabilities of the corporate enterprise;" accordingly, "except in cases of fraud, injustice, or the like, courts will not pierce a corporate veil." *Richard A. Pulaski Constr. Co. v. Air Frame Hangars, Inc.*, 195 N.J. 457, 472 (2008)(internal citations and quotations omitted).  The Complaint is devoid of any allegations supporting an inference that Bennett used the corporate form "to defeat the ends of justice, to perpetrate fraud, to accomplish a crime, or otherwise to evade the law," therefore, Bennett cannot be held personally liable for the alleged torts of Bennett Enterprises, Inc.  *Id.* (internal citation and quotation omitted).

In opposition to the instant Motion, Plaintiffs assert that they seek to impose individual liability on Bennett for his own actions, not the actions of Bennett Enterprises.  Specifically, they point to paragraph 66 of the Complaint, which alleges that

> James J. Bennett publicly hold[s] [himself] out as a hands-on owner[] who [is] very involved in the day to day operation of [his] bar LaCosta, visiting it and assuring certain standards are met.  It is believed and therefore averred that by [his] visits to the LaCosta, videotapes of bar patrons and [his] sponsorship of the Polar Bear Plunge, [he] knew that LaCosta business invitees are overserved alcohol.

These general allegations are insufficient to impose

7

individual liability on Bennett.  Nowhere does the Complaint allege that Bennett was present at LaCosta Lounge during the relevant time period.  Nor does it allege that Bennett had any contact, direct or indirect, with Tracy.  As discussed *infra*, Plaintiffs may have a viable Dram Shop Act claim against Bennett Enterprises (i.e., LaCosta Lounge) but merely asserting that Bennett himself knew that generally "business invitees [to LaCosta Lounge] are overserved alcohol" is insufficient to impose personal liability on James Bennett.

Accordingly, James Bennett's Motion to Dismiss all claims against him will be granted.[4]

**B.**

The Dram Shop Act's exclusive remedy provision states, "[t]his act shall be the exclusive civil remedy for personal injury or property damage resulting from the negligent service of alcoholic beverages by a licensed alcoholic beverage server."  N.J.S.A. 2A:22A-4.

In *Truchan v. Sayreville Bar and Restaurant, Inc., et al.*, 323 N.J. Super. 40, 52 (App. Div. 1999), the Appellate Division affirmed the trial court's dismissal of the plaintiff's claims of "wrongful hiring of tavern employees," "wrongful supervision of

---

[4] The Motion is also granted for the independent reasons set forth in Section III, Subsections B and D, *infra*.

8

tavern employees," "failure to identify patrons at risk to become intoxicated," and failure to "maintain the premises as a safe environment after [the] service of alcoholic beverages," holding that the Dram Shop Act's exclusive remedy provision foreclosed such claims.  While in dicta the Court left open the possibility that claims "predicated on theories other than negligent service of alcoholic beverages" might not be encompassed by the exclusive remedy provision, it held that in the present case, all the "common law claims plaintiff sought to assert against the Sayreville Bar all arose out of, and were related to, the negligent service of alcoholic beverages and are therefore barred."  *Id.* at 53.

Further underscoring the conclusion that negligent supervision claims are barred by the Dram Shop Act's exclusive remedy provision is *Bauer v. Nesbitt*, 198 N.J. 601 (2009).  In *Bauer*, the Supreme Court of New Jersey barred a plaintiff's claim that the defendant negligently allowed an intoxicated patron to leave its premises even when the plaintiff had no viable Dram Shop Act claim.[5]  198 N.J. at 613.  The Court observed that "to permit a negligent supervision cause of action to proceed in this case would fly in the face of the liability limits that the Legislature put in place in the Dram Shop Act," and declined to "impose on an alcoholic

---

[5] The plaintiff had no viable Dram Shop Act claim because the drunk driver who injured her was not served any alcohol by the defendant bar.  Rather, a fellow patron and friend surreptitiously poured rum in the driver's soda.  *Bauer*, 198 N.J. at 603.

beverage server the duty to monitor every guest, including those to whom no alcohol was served, for signs of possible intoxication." Id. at 613.

Thus, in view of the plain language of the statute, and the holdings of *Truchan* and *Bauer*, this Court concludes that Plaintiffs' common law claims of negligence and negligent hiring, training, and supervising[6] are clearly barred by the Dram Shop Act's exclusive remedy provision. Likewise, the Court holds that Plaintiffs' negligent infliction of emotional distress claim is also barred because it arises out of and is related to LaCosta Lounge's alleged negligent service of alcohol to Tracy. See *Truchan*, 323 N.J. Super. at 53.

Plaintiffs assert that their claims should not be dismissed because the complaint avers that LaCosta Lounge was a "sponsor" (Compl. ¶ 42) of the Polar Bear Plunge along with Sea Isle City. Plaintiffs reason that the sponsorship, presumably separate from LaCosta Lounge's status as a licensed alcoholic beverage server, created some unspecified "common law duty to people who attended" the Polar Bear Plunge. (Opposition Brief, p. 7)  First, the argument proves too much.  If the Court were to accept Plaintiffs'

---

[6] The negligent hiring, training, and supervising claim is based on the allegations that the "LaCosta bar . . . knew or should have known that [its] employees who served business invitees alcohol were not properly hired, trained, supervised, were careless or incompetent and such employment created a situation [that] harmed [Tracy]."  (Compl. ¶ 125)

10

reasoning, LaCosta Lounge would face potential liability to every person attending the Polar Bear Plunge, even those who never set foot in the LaCosta Lounge.  Second, Plaintiffs cite no law in their brief, and articulate no factual theory in their Complaint (or brief) fleshing out how "sponsoring"-- in some unspecified manner-- the Polar Bear Plunge created an independent duty to Tracy.  Mere sponsorship of the Polar Bear Plunge, alone, cannot save the common law negligence claims from the Dram Shop Act's exclusive remedy provision.

Accordingly, Plaintiffs' claims of negligence; negligent hiring, training, and supervision; and negligent infliction of emotional distress will be dismissed.[7]

### C.

Defendants also move to dismiss the Dram Shop Act claim, arguing that Plaintiffs fail to allege facts supporting such a claim.  The Court disagrees.

The Dram Shop Act provides:

> A person who sustains personal injury or property damage as a result of the negligent service of alcoholic beverages by a licensed alcoholic beverage server may recover damages . . . only if:
>
>   (1) The server [served a visibly intoxicated person];

---

[7] Defendants also assert that the statutory civil rights claims are barred by the Dram Shop Act's exclusive remedy provision.  The Court need not decide this issue, however, because those claims fail for independent reasons discussed *infra*.

11

    and

    (2) The injury or damage was proximately caused by the negligent service of alcoholic beverages; and

    (3) The injury or damage was a foreseeable consequence of the negligent service of alcoholic beverages.

N.J.S.A. 2A:22A-5.

    Defendants attack the second and third elements of the claim: proximate cause and foreseeability. They argue that the facts alleged do not support a conclusion that LaCosta Lounge's service of alcohol to Tracy was either the proximate cause of her death, or that her death was a foreseeable consequence of serving Tracy alcohol.

    Defendants argue that the allegations of the Complaint demonstrate that there were other superseding causes of Tracy's death and therefore LaCosta Lounge's service of alcohol to Tracy could not have been the proximate cause of her death. Such an argument is more appropriately addressed at summary judgment.[8]  An autopsy allegedly revealed that Tracy died of "hypothermia complicated by acute alcohol intoxication." (Compl. ¶ 106) Discovery of evidence regarding exactly when, and for how long Tracy visited LaCosta Lounge, along with how much alcohol LaCosta Lounge served Tracy will all be relevant in ruling-in, or

---

[8] Indeed, the cases Defendants cite in support of their argument are decisions on summary judgment motions, not motions to dismiss.

ruling-out, whether LaCosta Lounge's service of alcohol to Tracy-- as opposed to (or along with) the other Defendants' service of alcohol to her-- proximately caused her death.  At this stage of the case, the Complaint sufficiently alleges facts from which a factfinder could plausibly conclude that LaCosta Lounge's service of alcohol to Tracy proximately caused her death.

The Court reaches the same conclusion with regard to foreseeability.  The Complaint alleges that a beach town bar on the New Jersey shore, in mid-February, served alcohol to a clearly intoxicated woman who later fell off a pier into the Atlantic Ocean, and died of hypothermia complicated by acute alcohol intoxication.  These facts plausibly support a conclusion that Tracy's death was a foreseeable consequence of LaCosta Lounge's service of alcohol to Tracy.

Accordingly, Defendants' Motion to Dismiss the Dram Shop Act claim will be denied.[9]

### D.

Lastly, the Court agrees with the moving Defendants that the § 1983 claims and the parallel New Jersey Civil Rights Act claim fail because neither Defendant is a state actor.

Section 1983 provides,

---

[9] However, the Motion will be granted as to Defendant James Bennett for the reasons set forth in Section III., A.

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

Similarly, the New Jersey Civil Rights Act provides, in relevant part,

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion *by a person acting under color of law*, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c) (emphasis added).

With regard to the § 1983 color of law analysis, the Third Circuit has most recently explained,

> [a]lthough there is no simple line between state and private actors, we have explained that the principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be

>       recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(internal citations and quotations omitted).

Plaintiffs assert that the second test is met because the Complaint alleges that the Moving Defendants "sponsored" the Polar Bear Plunge along with Sea Isle City. First, as noted above, the nature of Moving Defendants' "sponsorship" is not described in the Complaint. This mere conclusory allegation cannot satisfy the "fact-specific" "inquiry" required by the state actor analysis. *Kach*, 589 F.3d at 646.

Moreover, under no plausible reading of the Complaint could one conclude that LaCosta Lounge served Tracy alcohol "'with the help of or in concert with state officials.'" *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995) (quoting *McKeesport Hospital v. Accreditation Council for Graduate Medical Ed.*, 24 F.3d 519, 524 (3d Cir. 1994)). The facts pled fall far short of supporting an inference of a conspiracy, *contrast Adickes v. S.H. Kress & Co.,* 398 U.S. 144 (1970); nor was LaCosta Lounge allegedly acting jointly with Sea Isle City pursuant to state statute, *contrast Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982).

The above analysis applies equally to the "color of law" requirement of the New Jersey Civil Rights Act, s*ee Pettit v. New Jersey,* No. 09-3735, 2011 U.S. Dist. LEXIS 35452 at *10 (D.N.J.

Mar. 30, 2011)(explaining that "[t]his district has repeatedly interpreted NJCRA analogously to § 1983" and collecting cases), and thus, the New Jersey Civil Rights Act claim fails for the same reason the § 1983 claims fail.  However, the New Jersey Civil Rights Act claim also independently fails because the Complaint does not plead that Tracy's rights were violated "by threats, intimidation, or coercion" as clearly required by the statute.  N.J.S.A. 10:6-2(c).

Accordingly, the Motion to Dismiss the federal and state statutory civil rights claims will be granted.

**IV.**

For the foregoing reasons, James Bennett's Motion to Dismiss the claims against him will be granted.  Bennett Enterprises' Motion to Dimiss will be granted except with respect to the Dram Shop Act claim, and the state law wrongful death and survivorship claims insofar as they relate to the Dram Shop Act claim.  An appropriate order will be issued.


Dated: June 17, 2011

                                                        s/Joseph E. Irenas
                                             **Joseph E. Irenas, S.U.S.D.J.**