UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
CHARLES S. HOTTENSTEIN,          :
Administrator for the Estate     :     HONORABLE JOSEPH E. IRENAS
of Tracy Hottenstein;            :   CIVIL ACTION NO. 11-740 (JEI/JS)
CHARLES S. HOTTENSTEIN; and      :
ELIZABETH K. HOTTENSTEIN,        :
                                 :
            Plaintiffs,          :            OPINION
                                 :
     v.                          :
                                 :
CITY OF SEA ISLE CITY;           :
et al.,                          :
                                 :
            Defendants.          :
```

**APPEARANCES:**

THE WESCOTT LAW FIRM, P.C.
By: Lyanne B. Wescott, Esq.
239 South Camac Street
Philadelphia, Pennsylvania 19107
        Counsel for Plaintiff

POWELL, BIRCHMEIER,& POWELL, P.C.
By: James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
        Counsel for Defendants Sea Isle City, Harold Boyer,
        Thomas McQuillen, and Vincent Haugh

FOX ROTHSCHILD, L.L.P.
By: Eric M. Wood, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
        Counsel for Defendants Atlantic Regional Medical
        Center, Atlanticare MICU Medics at Base 3, and Atlantic
        City Medical Center

BLUMBURG AND LINDER, L.L.C.
By: Jay J. Blumburg, Esq.
158 Delaware Street
P.O. Box 68

Woodbury, New Jersey 08096
          Counsel for Defendant Zaki Khebzou

CAMACHO MAURO MULHOLLAND, LLP
By:  Christopher C. Mauro, Esq.
350 Fifth Avenue, Suite 5101
New York, New York 10118
          Counsel for Defendants Landis Thirty Nine, Inc., Jersey
          Shore Properties, LLC, Michael Roberts, Ralph Pasceri,
          and Joseph Roberts

MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS
By:  Stephen Ledva, Jr., Esq.
2070 Springdale Road, Suite 400
Cherry Hill, New Jersey 08003
          Counsel for Defendants Bennett Enterprises, Inc., Paul
          Baldini, and James J. Bennett

PRUTTING & LOMBARDI ESQS.
By:  Marilou Lombardi, Esq.
701 South White Horse Pike
Audubon, New Jersey 08106
          Counsel for Defendants Mark Lloyd and Patricia Lloyd

WHITE, FLEISCHNER, & FINO, L.L.P.
By:  Brian Michael Thon, Esq.
2137 Route 35
Holmdel Corporate Plaza
Holmdel, New Jersey 07733
          Counsel for Defendant Michael Miloscia


**IRENAS**, Senior District Judge:

    This wrongful death / survivorship suit arises out of the

untimely and tragic death of Tracy Hottenstein.[1]  Presently

before the Court are Motions to Dismiss filed by Defendants Mark

and Patricia Lloyd (collectively "the Lloyds") and Defendant

Michael Miloscia.

----

    [1]  The Court exercises subject matter jurisdiction pursuant
to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28
U.S.C. § 1367.

**I.**

Sometime after 2:15 a.m. on February, 15, 2009, in Sea Isle City, Tracy Hottenstein, who was intoxicated at the time, fell off a public dock into the ocean below.  The Complaint avers that the weather was 35 degrees Fahrenheit and windy.  Several hours later, Tracy was discovered unresponsive on the ground near the dock.  After a series of events not directly relevant to the instant Motion, she died.

Tracy was visiting Sea Isle City for the annual "Polar Bear Plunge," an event which the Complaint alleges is intended to "benefit the town economy and allow local businesses to make money in the winter season from the thousands of visitors expected."  (Compl. ¶ 29.)  However, Tracy did not participate in the organized plunge into the Atlantic Ocean.  She only came to "attend[] the festivities," including "visiting the local bars" with her friends.  (Id. ¶ 38.)[2]

According to the Complaint, Tracy visited three bars over the course of several hours on February 14, 2009.  She first visited the Springfield Inn.  (Compl. ¶ 39.)  The Complaint does not state whether Tracy consumed any alcohol while there, or approximately how long she stayed.

Next Tracy visited the "LaCosta Lounge" where she and

---

[2]  The Complaint asserts that Tracy was 35 years old. (Compl. ¶ 36.)

several friends were allegedly served alcoholic beverages.  The
Complaint alleges that Tracy "was served even though she was
visibly intoxicated."  (Id. ¶ 40.)

Tracy eventually left LaCosta Lounge and went to Ocean Drive
bar, where she was allegedly served alcohol "while in a visibly
intoxicated state."  (Compl. ¶ 43.)

Later, Tracy and a friend, Michael Miloscia, joined Mark and
Patti Lloyd at the Lloyds' home for dinner where Tracy was
allegedly served more alcohol.  (Compl. ¶ 43.)  After dinner,
Tracy and Miloscia returned to Ocean Drive bar where Tracy was
allegedly served more alcohol.  (Compl. ¶¶ 45, 46.)

The Complaint avers what happened next:

> [v]ideo shows that [Tracy] without any outdoor clothing
> on, followed Miloscia out of the Ocean Drive bar at or
> about 2:15 a.m. on February 15, 2009. . . . Miloscia at
> some point abandoned [Tracy] . . . . [Tracy] in her
> intoxicated state[,] wandered to the dark, dangerous
> public docks from the Ocean Drive bar, fell off into the
> dark icy water and struggled out to the location she was
> found the morning of February 15, 2009.

(Compl. ¶¶ 60-62.)

The Complaint alleges the following claims against the
moving Defendants: (1) negligence; (2) negligent infliction of
emotional distress upon Plaintiffs (Tracy's parents); (3) a
survival claim; (4) wrongful death; and (5) a claim pursuant to
New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 et seq.

The Lloyds and Miloscia move to dismiss all claims against
them pursuant to Fed. R. Civ. P. 12(b)(6).

4

## II.

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted."  In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

## III.

## A.

The Lloyds move to dismiss the claims of negligence and negligent infliction of emotional distress arguing that they are barred by the Social Host Liability Act.

The Social Host Liability Act provides, "[n]o social host shall be held liable to a person who has attained the legal age to purchase and consume alcoholic beverages for damages suffered as a result of the social host's negligent provision of alcoholic beverages to that person." N.J.S.A. 2A:15-5.7. "A social host cannot be liable to the person to whom beverages are served, although there may be ultimate liability if that person injures a third party." *AAA Mid-Atlantic Ins. of New Jersey v. Prudential Property & Cas. Ins. Co.*, 336 N.J. Super. 71, 78 (App. Div. 2000); *see also Componile v. Maybee*, 273 N.J. Super. 402, 408 (Law Div. 1994)("A social host may only be directly liable to minors and to third persons injured in automobile accidents.").

Furthermore, the Social Host Liability Act contains an exclusive remedy provision, which states, "[t]his act shall be the exclusive civil remedy for personal injury or property damage resulting from the negligent provision of alcoholic beverages by a social host to a person who has attained the legal age to purchase and consume alcoholic beverages." N.J.S.A. 2A:15-5.6(a).

6

The Lloyds are alleged to have served Tracy alcohol at their home while she was visibly intoxicated. (*See* Compl. ¶¶ 21-22, 43.) In view of the plain language of the statute which proscribes social host liability to the person to whom alcohol is served, this Court concludes that Plaintiffs' common law negligence claim arising out of the Lloyds' alleged negligent provision of alcohol to Tracy is barred. Likewise, the Court holds that Plaintiffs' negligent infliction of emotional distress claim is also barred because it arises out of and is related to the Lloyd's alleged negligent service of alcohol to Tracy. *See* N.J.S.A. 2A:15-5.6(a).

Plaintiffs argue that their claims should not be dismissed because the Complaint alleges that the Lloyds also served alcohol to Tracy's friend Miloscia and "[d]iscovery will show if his vehicle was involved in any way in the injury to [Tracy]." (Opp. Br. at 6.) This bare speculation that Tracy's injuries might somehow be due to Miloscia's operation of a vehicle while intoxicated from alcohol served to him by the Lloyds is insufficient to bring the claim within the purview of the Social Host Liability Act.[3] While this Court must accept as true all

_____

[3] N.J.S.A. 2A:15-5.6(b) provides that a social host is liable for damages if: (1) he willfully and knowingly provides alcohol to a person visibly intoxicated in his presence; and (2) does so under circumstances which created an unreasonable risk of harm and the social host failed to exercise reasonable care to avoid the foreseeable risk; and (3) "[t]he injury arose out of an accident caused by the negligent operation of a vehicle by the

7

allegations in the Complaint, it is not required to accept
unsupported conclusions or unwarranted inferences. *See Morse*,
132 F.3d at 906.

Accordingly, Plaintiffs' claims of negligence and negligent
infliction of emotional distress against the Lloyds will be
dismissed.

**B.**

Defendant Miloscia moves to dismiss the claims of negligence
and negligent infliction of emotional distress against him
arguing that Plaintiffs' theory of liability is not supported by
any recognized legal duty.  (Br. in Support at 2, 6.)

To sustain a cause of action in negligence, a plaintiff must
prove that the defendant owed the plaintiff a duty of care, a
breach of that duty, proximate causation, and damages.  *Polzo v.
Cnty of Essex*, 196 N.J. 569, 584 (2008).  The determination of
whether to impose a duty is ultimately a question of fairness and
public policy.  *Kuzmicz v. Ivy Hill Park Apartments, Inc.*, 147
N.J. 510, 515 (1997).  Such a determination involves identifying,
weighing and balancing several factors, including: (1) the
relationship of the parties, (2) the nature of the attendant
risk, (3) the opportunity and ability to exercise care, and (4)
the public interest in the proposed solution.  *Brunson v.*

───────────────

visibly intoxicated person who was provided alcoholic beverages by
a social host."  N.J.S.A. 2A:15-5.6(b)(1)-(3).

8

*Affinity Federal Credit Union*, 199 N.J. 381, 403 (2009)(citing *Hopkins v. Fox & Lazo Realtors*, 132 N.J. 426, 439 (1993)).

A crucial factor in determining whether a duty exists is the foreseeability of injury to potential plaintiffs.  *Carter Lincoln-Mercury, Inc. v. Emar Group, Inc.*, 135 N.J. 182, 194 (1994).  "Foreseeability as a component of a duty to exercise due care is based on the defendant's knowledge of the risk of injury and is susceptible to objective analysis."  *J.S.*, 155 N.J. at 338.  "[T]he question whether there is a 'duty' merely begs the more fundamental question whether the plaintiff's interests are entitled to legal protection against the defendant's conduct."  *Weinberg v. Dinger*, 106 N.J. 469, 481 (1987)(cited in *J.S. v. R.T.H.*, 155 N.J. 330, 338 (1998)).

The Complaint alleges that Miloscia accompanied Tracy throughout the evening to dinner and for drinks at several bars.  (*See* Compl. ¶¶ 43, 45.)  At 2:15 a.m., Tracy followed Miloscia out of Ocean Drive bar and he allegedly "abandoned [Tracy] even though [he] knew [she] was in an intoxicated state and unable to fend for herself."  (Compl. ¶¶ 60-61.)  Plaintiffs argue that the "import of the allegations are that Mr. Miloscia intentionally met up with [Tracy] for the Polar Bear Plunge activities, provided alcohol to [Tracy] for hours on February 14, 2009, knew she was intoxicated, took her to dinner, provided more alcohol and then was seen leaving with her at 2:15 am."  (Opp. Br. to

9

Miloscia Motion at 6.)

In light of all the factors, these allegations do not support a finding that Miloscia owed a legal duty to Tracy. Miloscia's apparent friendship with her and their shared evening of socializing at the Polar Bear Plunge activities is not the kind of relationship that gives rise to a duty of care in tort law.  While Miloscia may have provided alcoholic drinks to Tracy, she, as an adult of legal drinking age, voluntarily chose to consume those drinks throughout the evening.  Furthermore, the danger that ultimately led to Tracy's death--the allegedly dark and dangerous public docks and her own intoxication--was neither attributable to Miloscia nor was it reasonably foreseeable to him.  Miloscia's alleged awareness of Tracy's intoxication does not make her injuries and ultimate death foreseeable to him, nor does it give rise to a duty on his part to ensure her safe arrival home at the end of the evening.

As Plaintiffs' negligent infliction of emotional distress claim is derivative of the underlying negligence claim, and this Court having found that Miloscia owed no legal duty to Tracy, Plaintiffs' negligent infliction of emotional distress claim must also fail.  Accordingly, Miloscia's Motion to Dismiss the negligence and negligent infliction of emotional distress claims will be granted.

**C.**

The Lloyds and Miloscia both move to dismiss the claims under the New Jersey Civil Rights Act ("NJCRA") arguing that they are not state actors.

NJCRA provides, in relevant part,

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. 10:6-2(c).

Since "[t]his district has repeatedly interpreted NJCRA analogously to § 1983," *see Pettit v. New Jersey,* No. 09-3735, 2011 U.S. Dist. LEXIS 35452 at *3 (D.N.J. Mar. 30, 2011), this Court will look to the color of law analysis for § 1983 claims. The Third Circuit has most recently explained,

> [a]lthough there is no simple line between state and private actors, we have explained that the principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself

11

> into a position of interdependence with the acting
> party that it must be recognized as a joint participant
> in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(internal citations and quotations omitted).

As noted *supra*, the only factual allegation against the Lloyds is that they served Tracy alcohol at their home while she was in a visibly intoxicated state.  (*See* Compl. ¶¶ 21-22, 43.) Miloscia is alleged to have had dinner and some drinks with Tracy, and to have left Ocean Drive bar at the same time as her. (*Id.* ¶¶ 43, 45-46, 60.)  Under no plausible reading of the Complaint could one conclude that the Lloyds or Miloscia acted under color of law.[4]  Moreover, Plaintiffs' NJCRA claim against these Defendants also fails because the Complaint does not plead that Tracy's rights were violated "by threats, intimidation, or coercion" as clearly required by the statute.  N.J.S.A. 10:6-2(c).

Accordingly, the Lloyds' and Miloscia's Motions to Dismiss

---

[4] Plaintiffs' bare speculation that Miloscia might have "acted in concert with, or obtained aid from...the Sea Isle police, the Lloyds where he was to stay, or LaCosta or Ocean Drive bars who acted in concert with Sea Isle City in relationship to the annual booze filled co-sponsored Polar Bear Plunge" is insufficient to state a claim under the NJCRA.  (Opp. Br. to Miloscia Motion at 9.)  Such a conclusory allegation does not satisfy the "fact-specific" "inquiry" required by the state actor analysis.  *Kach*, 589 F.3d at 646.

the NJCRA claims against them will be granted.[5]


## IV.

For the foregoing reasons, the Lloyds' and Miloscia's Motions to Dismiss the claims against them will be granted.  An appropriate order will be issued.


Dated:  June 27, 2011

_____s/Joseph E. Irenas_____
**JOSEPH E. IRENAS, S.U.S.D.J.**

---

[5]  Plaintiffs' wrongful death and survival claims are derivative.  *See* N.J.S.A. 2A:15-3; 2A:31-1 et. seq. Having dismissed the negligence and state constitutional claims against both the Lloyds and Miloscia, Plaintiffs cannot maintain a survival action or a wrongful death claim against these Defendants.  *See Abramson v. Ritz-Carlton Hotel Co., LLC*, 2010 WL 3943666, at *7 (D.N.J. Oct. 26, 2010).  Accordingly, the Lloyds and Miloscia's Motions to Dismiss will be granted with respect to the wrongful death and survival claims.