UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| CHARLES S. HOTTENSTEIN, Administrator for the Estate of Tracy Hottenstein; CHARLES S. HOTTENSTEIN; and ELIZABETH K. HOTTENSTEIN<br><br>    Plaintiffs,<br><br>   v.<br><br>CITY OF SEA ISLE CITY; et al.,<br><br>    Defendants. | HONORABLE JOSEPH E. IRENAS<br><br>CIVIL ACTION NO. 11-740 (JEI/JS)<br><br>**OPINION** |

**APPEARANCES:**

THE WESCOTT LAW FIRM, P.C.
By: Lyanne B. Wescott, Esq.
239 South Camac Street
Philadelphia, Pennsylvania 19107
        Counsel for Plaintiff

POWELL, BIRCHMEIER,& POWELL, P.C.
By: James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
        Counsel for Defendants Sea Isle City, Harold Boyer,
        Thomas McQuillen, and Vincent Haugh

FOX ROTHSCHILD, L.L.P.
By: Eric M. Wood, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
        Counsel for Defendants Atlantic Regional Medical
        Center, Atlanticare MICU Medics at Base 3, and Atlantic
        City Medical Center

BLUMBURG AND LINDER, L.L.C.
By: Jay J. Blumburg, Esq.
158 Delaware Street
P.O. Box 68

1

```
Woodbury, New Jersey 08096
        Counsel for Defendant Zaki Khebzou

CAMACHO MAURO MULHOLLAND, LLP
By:  Christopher C. Mauro, Esq.
350 Fifth Avenue, Suite 5101
New York, New York 10118
        Counsel for Defendants Landis Thirty Nine, Inc., Jersey
        Shore Properties, LLC, Michael Roberts, Ralph Pasceri,
        and Joseph Roberts

MINTZER, SAROWITZ, ZERIS, LEDVA & MEYERS
By:  Stephen Ledva, Jr., Esq.
2070 Springdale Road, Suite 400
Cherry Hill, New Jersey 08003
        Counsel for Defendants Bennett Enterprises, Inc., Paul
        Baldini, and James J. Bennett

PRUTTING & LOMBARDI ESQS.
By:  Marilou Lombardi, Esq.
701 South White Horse Pike
Audubon, New Jersey 08106
        Counsel for Defendants Mark Lloyd and Patricia Lloyd

WHITE, FLEISCHNER, & FINO, L.L.P.
By:  Brian Michael Thon, Esq.
2137 Route 35
Holmdel Corporate Plaza
Holmdel, New Jersey 07733
        Counsel for Defendant Michael Miloscia
```

**IRENAS**, Senior District Judge:

This wrongful death / survivorship suit arises out of the untimely and tragic death of Tracy Hottenstein.[1] Presently before the Court are Motions for Judgment on the Pleadings pursuant to Federal Rule of Civil Procedure 12(c) filed by Defendants Zaki Khebozou and Atlanticare Regional Medical Center,

---

[1] The Court exercises subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

2

Atlanticare MICU Medics at Base 3, and Atlantic City Medical Center (collectively "ARMC").

## I.

Sometime after 2:15 a.m. on February, 15, 2009, in Sea Isle City, Tracy Hottenstein, who was intoxicated at the time, fell off a public dock into the ocean below. The Complaint avers that the weather was 35 degrees Fahrenheit and windy. Several hours later, Tracy was discovered unresponsive on the ground near the dock.

Tracy was visiting Sea Isle City for the annual "Polar Bear Plunge," an event which the Complaint alleges is intended to "benefit the town economy and allow local businesses to make money in the winter season from the thousands of visitors expected." (Compl. ¶ 29.) However, Tracy did not participate in the organized plunge into the Atlantic Ocean. She only came to "attend[] the festivities," including "visiting the local bars" with her friends. (Id. ¶ 38.)[2] According to the Complaint, over the course of several hours on February 14, 2009, Tracy visited three bars and a friend's house where she consumed alcohol.[3]

The Complaint avers what happened next:

---

[2] The Complaint asserts that Tracy was 35 years old. (Compl. ¶ 36.)

[3] For a more detailed discussion of these events, see *Hottenstein v. Sea Isle*, --- F.Supp. 2d ---, 2011 WL 2470043 (D.N.J. 2011).

> [v]ideo shows that [Tracy] without any outdoor clothing on, followed [her fiend] Miloscia out of the Ocean Drive bar at or about 2:15 a.m. on February 15, 2009. . . . Miloscia at some point abandoned [Tracy] . . . . [Tracy] in her intoxicated state[,] wandered to the dark, dangerous public docks from the Ocean Drive bar, fell off into the dark icy water and struggled out to the location she was found the morning of February 15, 2009.

(Compl. ¶¶ 60-62.)

The Sea Isle City police officers who arrived at the scene determined, based solely on feeling for a carotid pulse, that Tracy was deceased.  (*Id.* ¶ 75.)  When the Sea Isle City Volunteer Ambulance Corps arrived at the scene at 7:52 a.m., they viewed Tracy from a distance of twenty feet and reported her "dead on arrival" without examination.  (*Id.* ¶ 77-78.)  At 8:13 a.m., Atlanticare MICU medics, a mobile trauma team associated with Atlanticare Regional Medical Center, arrived on the scene and observed Tracy from a distance of six feet.[4]  (*Id.* ¶ 80.)  Despite the fact that no medical treatment had been administered and no examination of Tracy conducted, an Atlanticare medic telephoned Defendant Zaki Khebzou, Trauma Chief, who pronounced Tracy dead at 8:22 a.m. over the phone.[5]  (*Id.* ¶ 84, 86.)

The Complaint alleges the following claims against the moving Defendants: (1) negligence; (2) negligent hiring,

---

[4]  The Sea Isle police officers allegedly prevented anyone from approaching Tracy or rendering medical treatment.  (Compl. ¶¶ 76-77, 80.)

[5]  Defendant Zaki Khebzou is an M.D.

supervision and retention; (3) vicarious liability (only against ARMC); (4) negligent infliction of emotional distress upon Plaintiffs (Tracy's parents); (5) a survival claim; (6) wrongful death; and (7) a claim pursuant to New Jersey's Civil Rights Act, N.J.S.A. 10:6-1 et seq.

Defendants Khebzou and ARMC move for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), arguing that all claims against them should be dismissed.

## II.

Pursuant to Fed. R. Civ. P. 12(c), "[a]fter the pleadings are closed--but early enough not to delay trial--a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) Motion for Judgment on the Pleadings is subject to the same standard of review as a Rule 12(b)(6) Motion to Dismiss. *Turbe v. Gov't of V.I.*, 938 F.2d 427, 428 (3d Cir. 1991); *see also Spruell v. Gillis*, 372 F.3d 218, 223 n.2 (3d Cir. 2004); *Collins v. F.B.I.*, 2011 WL 1624025, at *4 (D.N.J. April 28, 2011).

Federal Rule of Civil Procedure 12(b)(6) provides that a court may dismiss a complaint "for failure to state a claim upon which relief can be granted." In order to survive a motion to dismiss, a complaint must allege facts that raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007); *see also* Fed. R. Civ. P. 8(a)(2).

While a court must accept as true all allegations in the plaintiff's complaint, and view them in the light most favorable to the plaintiff, *Phillips v. County of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008), a court is not required to accept sweeping legal conclusions cast in the form of factual allegations, unwarranted inferences, or unsupported conclusions. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). The complaint must state sufficient facts to show that the legal allegations are not simply possible, but plausible. *Phillips*, 515 F.3d at 234. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).

### III.

### A.

Defendants Khebzou and ARMC argue that they are entitled to immunity under N.J.S.A. § 26:2K-29, which provides:

> No EMT-intermediate, licensed physician, hospital or its board of trustees, officers and members of the medical staff, nurses or other employees of the hospital, or officers and members of a first aid, ambulance or rescue squad shall be liable for any civil damages as the result of an act or the omission of an act *committed while in training for or in the rendering of intermediate life support services* in good faith and in accordance with this act.

6

N.J.S.A. § 26:2K-29 (emphasis added).  This act only provides immunity for an act or omission made in connection with the "rendering of intermediate life support services."

N.J.S.A. § 26:2K-21(i) defines "intermediate life support services" as "an intermediate level of pre-hospital, inter-hospital, and emergency service care which includes basic life support functions,[6] cardiac monitoring, cardiac defibrillation, the use of the esophageal obturator airway, and the use of military anti-shock trousers and other techniques and procedures authorized by the commissioner[.]"  N.J.S.A. § 26:2K-21(i).

Here, there appears to be no dispute that Defendants Khebzou and ARMC did not provide any life support services.  Rather, moving Defendants argue that their decision to not provide life support services is an omission to act, protected by the immunity provision of N.J.S.A. § 26:2K-29.[7]  (Khebzou Br. at 10; ARMC Br. at 9.)  However, immunity under the Act is provided only "for

---

[6] "Basic life support" means "a basic level of pre-hospital care which includes patient stabilization, airway clearance, cardiopulmonary resuscitation, hemorrhage control, initial wound care and fracture stabilization and other techniques and procedures authorized by the commissioner[.]"  N.J.S.A. § 26:2K-21(b).

[7] ARMC also contends that their "visual observations" of Tracy's body and the phone call to Defendant Khebzou "are encompassed in the rendering of intermediate life support services."  (ARMC Reply at 7.)  However, ARMC cites no case law to substantiate such a position which is not supported by the plain language of the immunity provision and the statutory definition of "intermediate life support services."

negligence in connection with the actual rendering of life support services." *DeTarquino v. City of Jersey City*, 352 N.J.Super. 450, 452 (App. Div. 2002).

The Complaint alleges that Defendant Khebzou improperly declared Tracy dead without seeing her, examining her or ordering any pre-hospital care. (Compl. ¶¶ 86-90, 105, 108.) With respect to ARMC, the Complaint alleges that they breached their duty to act and provide emergency medical care. (*Id.* ¶¶ 81, 82.) The basis of Plaintiffs' negligence claim against moving Defendants is that they were negligent in failing to render intermediate or basic life support services. Thus, they are not entitled to immunity as they did not omit to act "while . . . in the rendering of intermediate life support services" as required by the plain language of the statute. N.J.S.A. § 26:2K-29.

Accordingly, Defendant Khebzou's and ARMC's Motions with respect to Counts One, Two, Three, Five, Six and Seven will be denied.

**B.**

A claim for negligent infliction of emotional distress ("NIED") requires proof of the following elements: "(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate, familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene of the accident; and (4) resulting

8

severe emotional distress." *Portee v. Jaffee*, 84 N.J. 88, 101 (1980).

Defendants Khebzou and ARMC move to dismiss the NIED claim against them, arguing that Plaintiffs cannot establish prong three because they were not present at the scene of the accident and therefore did not observe Tracy's death or injury. (Khebzou Br. at 13; ARMC Br. at 13.) Plaintiffs point out that there is a question of fact regarding exactly when and where Tracy died of hypothermia. Therefore, they argue, "[i]t will be a jury question as to whether the gruesome idea that their daughter may have been zipped into a body bag while still alive and their subsequent exposure to same is a 'shocking event' adequate to fulfill the 'observation' element of the this claim." (Pls' Opp. at 11.)

The allegations in the Complaint do not implicate Plaintiffs' contemporaneous perception of their daughter's injury or death for the purposes of maintaining an NIED claim. According to the Complaint, Plaintiffs were notified of Tracy's death "in the early afternoon of February 15, 2009, by two local police officers who came to their home in Montgomery County, Pennsylvania." (Compl. ¶ 112.) Plaintiffs were not present in Sea Isle City, the site of Tracy's injury and the location where she was pronounced dead. Moreover, Plaintiffs do not even allege that they witnessed Tracy being "zipped into a body bag," merely

9

that the "gruesome idea" of it was a shocking event.

Thus, while "[d]iscovering the death or serious injury of an intimate family member will always be expected to threaten one's emotional welfare," a family member who was not a witness at the scene of the accident causing death or serious injury cannot sustain a cause of action for NIED. *Portee*, 84 N.J. at 99-100. Accordingly, Defendant Khebzou's and ARMC's Motions will be granted with respect to Plaintiffs' NIED claim in Count Five.

### c.

Defendants Khebzou and ARMC move to dismiss the claims under the New Jersey Civil Rights Act ("NJCRA") arguing that they did not act under color of state law.

NJCRA provides, in relevant part,

> [a]ny person who has been deprived of any substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, or any substantive rights, privileges or immunities secured by the Constitution or laws of this State, or whose exercise or enjoyment of those substantive rights, privileges or immunities has been interfered with or attempted to be interfered with, by threats, intimidation or coercion by a person acting under color of law, may bring a civil action for damages and for injunctive or other appropriate relief.

N.J.S.A. § 10:6-2(c).

Since "[t]his district has repeatedly interpreted NJCRA analogously to § 1983," s*ee Pettit v. New Jersey,* No. 09-3735, 2011 U.S. Dist. LEXIS 35452 at *3 (D.N.J. Mar. 30, 2011), this

Court will look to the color of law analysis for § 1983 claims. The Third Circuit has most recently explained,

> [a]lthough there is no simple line between state and private actors, we have explained that the principal question at stake is whether there is such a close nexus between the State and the challenged action that seemingly private behavior may be fairly treated as that of the State itself. To answer that question, we have outlined three broad tests generated by Supreme Court jurisprudence to determine whether state action exists: (1) whether the private entity has exercised powers that are traditionally the exclusive prerogative of the state; (2) whether the private party has acted with the help of or in concert with state officials; and (3) whether the state has so far insinuated itself into a position of interdependence with the acting party that it must be recognized as a joint participant in the challenged activity.

*Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009)(internal citations and quotations omitted).

Plaintiffs argue that Defendants Khebzou and ARMC acted under color of state law when they followed procedures set forth in the New Jersey Administrative Code regarding the pronouncement of death and other standards of medical care.[8] (Pls' Opp. to Khebzou at 11-12.)  This argument lacks merit, as compliance with state standards or engagement in an activity regulated by the state does not convert a private party into a state actor for the purposes of the NJCRA.  Moreover, Plaintiffs' NJCRA claim also

---

[8]  Plaintiffs' bare speculation that ARMC "acted jointly with the police" is insufficient to state a claim under the NJCRA. (Pls' Opp. to ARMC Motion at 13.)  Such a conclusory allegation does not satisfy the "fact-specific" "inquiry" required by the state actor analysis.  *Kach*, 589 F.3d at 646.

fails because the Complaint does not plead that Tracy's rights were violated "by threats, intimidation, or coercion" as clearly required by the statute.  N.J.S.A. § 10:6-2(c).

Accordingly, Defendant Khebzou's and ARMC's Motions with respect to the NJCRA claim asserted against them in Count Thirteen will be granted.


**IV.**

For the foregoing reasons, Defendant Khebzou's and ARMC's Motions for Judgment on the Pleadings will be granted with respect to Plaintiffs' NIED and NJCRA claims only.  An appropriate order will be issued.


Dated: August 18, 2011

                                  s/Joseph E. Irenas
                                  **JOSEPH E. IRENAS, S.U.S.D.J.**