```
                    UNITED STATES DISTRICT COURT
                       DISTRICT OF NEW JERSEY
```

| | |
|---|---|
| CHARLES S. HOTTENSTEIN, : | |
| Administrator for the Estate : | HONORABLE JOSEPH E. IRENAS |
| of Tracy Hottenstein; : | CIVIL ACTION NO. 11-740 |
| CHARLES S. HOTTENSTEIN; and : | (JEI/JS) |
| ELIZABETH K. HOTTENSTEIN, : | |
| : | |
| Plaintiffs, : | **OPINION** |
| : | |
| v. : | |
| : | |
| CITY OF SEA ISLE CITY; : | |
| et al., : | |
| : | |
| Defendants. : | |

**APPEARANCES:**

THE WESTCOTT LAW FIRM, P.C.
By: Lynanne B. Wescott, Esq.
239 South Camac Street
Philadelphia, Pennsylvania 19107
    Counsel for Plaintiffs

POWELL, BIRCHMEIER & POWELL, P.C.
By: James R. Birchmeier, Esq.
1891 State Highway 50
P.O. Box 582
Tuckahoe, New Jersey 08250
    Counsel for Defendants City of Sea Isle City, Harold
    Boyer, Thomas McQuillen, and Vincent Haugh

LAW OFFICES OF JAY J. BLUMBERG, ESQ.
By: Christopher M. Wolk, Esq.
158 Delaware Street
P.O. Box 68
Woodbury, New Jersey 08096
    Counsel for Defendants Zaki Khebzou and Atlantic
    Emergency Associates

MAYFIELD TURNER O'MARA & DONNELLY, P.C.
By:  Michael J. O'Mara, Esq.
     Robert J. Gillespie, Jr., Esq.
2201 Route 38, Suite 300
Cherry Hill, New Jersey 08002
        Counsel for Defendants Sea Isle Ambulance Corps and
        Phyllis Linn

FOX ROTHSCHILD, L.L.P.
By:  Peter Sarkos, Esq.
     Epiphany McGuigan, Esq.
1301 Atlantic Avenue, Suite 400
Atlantic City, New Jersey 08401
        Counsel for Defendants Atlanticare Regional Medical
        Center, Atlantic City Medical Center, Atlanticare MICU
        Medics at Base 3


**IRENAS,** Senior United States District Judge:

This wrongful death / survivorship suit arises out of the untimely and tragic death of Tracy Hottenstein.[1]  Presently before the Court is Defendants Atlanticare Regional Medical Center, Atlanticare MICU Medics at Base 3, and Atlantic City Medical Center's Motion to Limit Damages under the New Jersey Charitable Immunity Act.

**I.**

Sometime after 2:15 a.m. on February 15, 2009, in Sea Isle City, Tracy Hottenstein, who was intoxicated at the time, fell

---
[1] The Court exercises federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

off a public dock into the ocean below.[2]  As a result of some of
the events that occurred after her disappearance, Tracy died.
The Court reviews only the facts relevant to deciding the
Defendant's Motion to Limit Damages.

Tracy was discovered at approximately 7:52 a.m., when
Francis Haney placed a 911 call to report a body found on the
Sea Isle City Marina boat launching ramp.  (Pls.' Ex. 15; Pls.'
Ex. 16)  Over the course of the next thirty minutes, various
police and rescue personnel responded to the scene.  At 8:02
a.m., Frank Rocco and Michael Senisch of the Atlanticare MICU
were dispatched to make a "pronouncement."  (Pls.' Ex. 24 at 1)
They arrived at the scene at 8:13 a.m., where they were not
granted physical access to Tracy's body because the area was
considered a crime scene.  (Pls.' Ex. 24 at 1.)  Upon arrival,
Senisch spoke with police officers who reported that Tracy was
pulseless and apneic, and that the paramedics were called to the
scene to declare Tracy deceased.  (Pls.' Ex. 17 at 43:10-45:15.)

At 8:21 a.m., Senisch called Dr. Zaki Khebzou, a physician
back at the Atlanticare base, to obtain a pronouncement of

---

[2] On February 14, 2009, Tracy attended the Polar Bear Plunge in Sea Isle City
with friends, and afterwards went to LaCosta Lounge and Ocean Drive bars.
She was last seen departing the Ocean Drive bar on surveillance video
sometime around 2:15 a.m., and was not seen again until a bystander, Francis
Haney, discovered her body early the next morning.  For further details on
Tracy's activities following the Polar Bear Plunge, see *Hottenstein v. Sea
Isle City*, 768 F.Supp.2d 688 (D.N.J. 2012).

death.  (Pls.' Ex. 5.)  In a brief call, Sensich identified himself as a paramedic from Medic Three and explained that he was calling for a pronouncement.  (*Id.*)  Senisch described Tracy as demonstrating "obvious irreversible signs of death."  (*Id.*)  After hearing further description, Khebzou pronounced Tracy deceased at 8:22 a.m. and ended the phone call.  (*Id.*)  After hanging up the call, Medic Three was placed back on to "available" status at 8:24 a.m.  (Pls.' Ex. 24 at 1.)

Pursuant to the New Jersey Charitable Immunity Act, Defendants Atlanticare Regional Medical Center, Atlanticare MICU Medics at Base 3, and Atlantic City Medical Center presently move to limit damages at trial for any alleged negligent acts.

**II.**

The New Jersey Charitable Immunity Act limits the liability of nonprofit hospitals for negligence at $250,000.  The statute provides:

> Any nonprofit corporation, society or association organized exclusively for hospital purposes shall be liable to respond in damages to such beneficiary who shall suffer damages from the negligence of such corporation, society or association or of its agents or servants to an amount not exceeding $250,000 together with interest and costs of suit, as the result of any one accident and to the extent to which such damage, together with

4

>       interest and costs shall exceed the sum of
>       $250,000 such nonprofit corporation, society
>       or association organized exclusively for
>       hospital purposes shall not be liable
>       therefore.

N.J.S.A. 2A:53A-8.

To fall within the protections of the Charitable Immunity Act, a defendant must demonstrate two elements: (1) that the defendant is a charitable organization that is organized exclusively for hospital purposes, and (2) that the plaintiff was a beneficiary of its services. *Mottola v. Union City*, 2007 WL 2177405, at *2 (D.N.J. July 31, 2006).

In *Mottola*, the defendants satisfied the first element by producing two affidavits from hospital officers demonstrating that the hospital was a nonprofit entity organized for hospital purposes. *Id.* The defendants satisfied the second element by showing that the plaintiff received care from the hospital defendants. *Id.* Putting aside the role of insurance in patient care, the court held that "every patient at the hospital receiving care is a beneficiary of its work. Plaintiff has received treatment at both [hospitals] and is therefore considered a beneficiary under the statute." *Id.* (internal citation omitted).

New Jersey courts have had few other opportunities to explain what constitutes beneficiary status under N.J.S.A.

2A:53A-8.  However, in interpreting companion portions of the Charitable Immunity Act, New Jersey courts have heeded the Legislature's instruction to liberally construe the definition of beneficiary so as to afford immunity to qualifying entities "in furtherance of the public policy for the protection of [such entities.]"  *See, e.g.*, *Orzech v. Fairlegh Dickinson Univ.*, 985 A.2d 189, 205 (N.J. Super. App. Div. 2009) (alteration in original) (quoting N.J.S.A. 2A:53A-10).

To determine beneficiary status under one such companion provision, N.J.S.A. 2A:53A-7, the New Jersey Superior Court explained that "[b]eneficiary status [does] not depend upon a showing that the claimant personally received a benefit from the works of the charity, but rather whether the institution pleading the immunity . . . was engaged in the performance of the charitable objectives it was organized to advance."  *Hehre v. DeMarco*, 24 A.3d 836, 840 (N.J. Super. App. Div. 2011) (second and third alteration in original) (quoting *Anasiewicz v. Sacred Heart Church*, 181 A.2d 787, 789-90 (N.J. Super. App. Div. 1962)).  Thus, in *Hehre*, the Charitable Immunity Act was applied to a nonprofit Catholic school defendant when the plaintiff (a school student) sustained injuries in a car accident while traveling to a school-sponsored track meet in a school vehicle

because participation in athletics was part of the purpose for which the religious school was formed.  *Hehre*, 24 A.3d at 840.

Here, the Atlanticare Defendants have produced documentation demonstrating that the Defendants are nonprofit entities organized for hospital purposes.  The Defendants have provided a certification by Kathleen Johnson, the Director of Risk Management for Atlanticare Health System, Inc.  (Def. Ex. A.)  The certification explains that Atlanticare Regional Medical Center and Atlantic City Medical Center were both organized as nonprofit entities and continue to be organized as such.[3]  (*Id.* at ¶ 5.)  The Revised Articles of Incorporation of both entities state that they are organized in a charitable manner as tax-exempt entities under §§ 501(c)(3) and 509(a)(1) of the Internal Revenue Code.  (Def. Ex. B at ¶ 2; Def. Ex. D at ¶2.)  The purpose of both entities, as expressed in the Articles, is to operate nonprofit hospital entities and undertake all the activities necessary to accomplish that purpose. (Def. Ex. B at ¶¶ 2(a)-(c); Def. Ex. D at ¶¶ 2(a)-(f).)  In light of this documentation, the Court is satisfied that both entities constitute nonprofit hospital entities within the meaning of the Charitable Immunity Act.

---

[3] The third Defendant, Atlanticare MICU Medics at Base 3, is characterized as an "ancillary department of [Atlanticare Regional Medical Center], just like the radiology or pharmacy department[s]."  (Def. Ex. A at ¶ 6.)

Second, the Atlanticare Defendants have demonstrated that Tracy Hottenstein was a beneficiary of the hospital Defendants. At oral argument, Plaintiffs argued that because the Defendants were called to the scene in order to pronounce Tracy deceased rather than to render aid, Tracy was not a beneficiary of the Defendants' care within the statute.[4] Nonetheless, the rendering of a pronouncement is sufficient to create a beneficiary status under New Jersey law. New Jersey administrative regulations require that physicians, in concert with paramedics when necessary, make pronouncements of death. N.J.A.C. 13:35-6.2(d). This activity is therefore within the responsibilities of a physician and a hospital and thus falls within the purposes expressed by the Restated Certificates of Incorporation of Atlantic City Medical Center and Atlanticare Regional Medical Center. Because the Atlanticare Defendants were engaged in the activities they were organized to advance, the pronouncement of death was sufficient to make Tracy a beneficiary under the

---

[4] There is no dispute that the Defendants were only called for a "pronouncement." The deposition testimony of paramedic Michael Senisch reflected that he and another paramedic, Frank Rocco, were called only for a pronouncement. (Pls.' Ex. 17 at 43:17.) The paramedics report also reflects that Senisch and Rocco were dispatched for a pronouncement. (Pls.' Ex. 24 at 1.) After arriving at the scene of Tracy's body, the paramedics called Dr. Zaki Khebzou and explicitly stated that they were calling for a pronouncement. (Pls.' Ex. 5.)

Charitable Immunity Act and therefore limit the hospital Defendants' liability for negligence to damages of $250,000.[5]

**III.**

For the foregoing reasons, Defendants' Motion to Limit Damages will be granted. An appropriate Order accompanies this Opinion.

Date: 10/3/13

                                     /s Joseph E. Irenas
                                     JOSEPH E. IRENAS, S.U.S.D.J.

---

[5] Additionally, the Plaintiffs argue in their opposition to the present Motion that the Defendants' actions constituted gross negligence, thereby removing the protections of the Charitable Immunity Act. However, the Plaintiffs have failed to explain how the evidentiary record alleges the Defendants' gross negligence. Therefore consideration of whether the Charitable Immunity Act would apply to grossly negligent behavior, if demonstrated, is moot.