UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Charles S. Hottenstein, et al** : | Civil Action No. |
| : | 1:11-cv-00740-JEI-JS |
| : | Hon. Joseph Irenas |
| **Plaintiffs** : | |
| v.                  : | |
| : | Jury Trial |
| **City of Sea Isle City, et al** : | |
| **Defendants** : | |

**PLAINTIFFS' OMNIBUS MOTIONS IN LIMINE**

In an effort to organize and streamline the various limine motions that plaintiffs believe are relevant to decisions that may need to be made prior to or during trail, this omnibus motion is submitted:

Fed. R. Evid. 104(a) permits the Court in its discretion to make definitive pretrial evidentiary rulings *in limine*. A hearing may or may not be necessary, and it is in the Court's discretion. Feit v. Great-West Life and Annuity Ins. Co., 460 F. Supp. 2d 632 (D.N.J. 2006). Plaintiff submits that the following motions will not require a hearing. Whether evidence is admissible depends first on the purpose for which it is offered. Fed. R. Evid. 105. Second, the evidence must be relevant and not excessively prejudicial for the purposes offered. Fed. R.

Evid. 401, 403. Third, if the evidence is introduced by the testimony of a sponsoring witness who is testifying as to scientific, technical or specialized matters, the admissibility of the evidence is dependent on whether the witness's testimony meets the requirements of Fed. R. of Evid. 702 and the *Daubert/Kumho Tire* standards. Finally, Fed. R. Evid. 102 emphasizes that interpretations of the rules of evidence should be made with an eye towards promptly, fairly, efficiently and inexpensively adjudicating cases.

If the Court should grant any of these motions, it is respectfully requested that it instruct the defense not to mention any particular motion in limine was filed and to warn and caution each defense witness to strictly follow the Court's decisions on the limine motions.

### A.   Original Photographs Must Be Used

The original investigation photographs on disc received from the Cape May County Prosecutor's Office or the Medical Examiner's Office are the best evidence of the photographic recordation of the scene as it was photographed digitally and paper copies are specifically objected to unless they are certified. Fed. R. Evid. 902(1) and (4), 1002, 1003. Plaintiff has obtained certified copies of photographs from the Office of Medical Examiner.

### B.   The Photograph Allegedly Depicting Tache Noir Must Be Barred

One of the photographs taken at an unknown time at the scene depicts a close-up of Tracy's face showing discoloration of the whites of Tracy's eyes. There was no mention of this discoloration by the medics or the police. Defendants should be barred from referencing this photograph as a basis for any decision by any defendant to pronounce Tracy dead, because no defendant saw this discoloration before acting. A limiting instruction on the use of that photograph is warranted as it is irrelevant, confusing and more prejudicial than probative. Fed. R. Evid. 403. It is expected that defendants will use this photograph to try to disprove causation. However, defendants' position that Tracy was dead when she was pronounced dead is based on the information of which they availed themselves—and it did not include looking at her eyes.

### C. The Photographs Allegedly Depicting "Lividity" Must Be Subject to a Limiting Instruction

Similarly, a number of photographs taken after the medics left depict a skin coloration condition that defendants have labeled "lividity". The medic told Dr. Khebzou he could see "depended lividity" as part of his report to the doctor for a pronouncement. There are no photographs from the time period medics were on scene, 8:13 a.m. to 8:23 a.m. Medic witnesses should be instructed not to tell the jury any photograph depicts what they saw at the time they were at the scene because there are no photographs of what the medics saw at the particular time they were on scene. Alternatively, the Court should instruct the jury that any

photograph the medics reference was taken after they left the scene and does not accurately depict what they observed.

### D. Opinions About Tracy's Condition by On-Scene Individuals Must Be Barred

The admission of lay opinion testimony from scene personnel (including the Sea Isle City Ambulance Corps members, police officers or investigators) about Tracy's condition, including whether she was dead or alive, or had "lividity" must be barred. Lay opinion must be strictly limited to that about which they have personal knowledge. Scene personnel should also be barred from drawing conclusions or labeling any physical manifestation (such as describing a skin condition as "lividity"), which requires testimony by an expert pathologist. The requirement of personal knowledge is a foundational requirement of Fed. R. Evid. 701. Only three police officers touched Tracy prior to the medic arriving. No medic got closer than 6 to 10 feet from her, and ambulance corps members were much further away. Only one officer spoke to Medic Senisch, who then called Dr. Khebzou. No other testimony is relevant and should not be allowed because of the danger of confusion of the jury and prejudice to the defendant. Fed. R. Evid. 403, 701.

However, none of the police officers who actually felt for a pulse are qualified to give opinions about her medical condition, it would be speculation and any conclusion drawn from their asserted inability to obtain a pulse would

necessarily be based upon specialized knowledge. (See Fed. R. Evid. 701 (c)). Police officers in New Jersey are not statutorily authorized to pronounce death. None of the on-scene personnel who failed to examine Tracy, and looked at her from far away, had sufficient facts or data to come to a lay opinion because 1) such testimony is not rationally based on the witness's perception; 2) is not helpful in determining a fact in issue and 3) would necessarily be based upon specialized knowledge as required by Fed. R. Evid. 702. It would be more prejudicial than probative. Fed. R. Evid. 403.

Moreover, these witnesses cannot provide an opinion at trial when that opinion is based primarily on the statements or observations of others. Any other conclusion would allow, for example, a medic or police officer to subvert the prohibition against hearsay and pass along the essence of those hearsay statements to the jury even when the officer is not permitted to testify to the substance of others' statements under the hearsay rule. That is exactly what happened here as reflected in the medic's reports.

Paramedics Senisch and Rocco never examined Tracy. There is the danger of confusion of the jury and prejudice to the plaintiff if non-experts, especially those who never examined Tracy, state their conclusions or opinions about, for example, death and "lividity". Fed. R. Evid. 403, 701. If a witness cannot state the objective basis for his opinion, the opinion is not rationally based

on the witness's perception. Here there is no objective evidence that Tracy was dead. U.S. v. Kaplan, 490 F.3d 110 (2d Cir. 2007); U.S. v. White, 492 F.3d 380 (6th Cir. 2007)(Medicare auditors could testify as lay witnesses about their participation in audit, but could not explain procedure without being identified as experts); U.S. v. Cruz 363 F.3d 187 (2d Cir. 2004)(DEA Agent not identified as an expert could not testify as to meaning of terms used in drug culture). Similarly, none of the scene personnel have been identified as experts by the defendants and, in particular, the medical personnel who did not examine Tracy do not have personal objective evidence about Tracy's condition. They can testify about their participation at the scene, but can go no further.

    **E.    The Use of Certain Words Should Be Barred or Subject to Restriction**

The use of the word "intoxication" and related words, and the suggestion of drinking must be barred because neither defendant had any knowledge of same until the issuance of the medical examiner's report and toxicology reports several days later. There can be no evidence of actual impairment. The topic of drinking or intoxication is not relevant to the claims against the defendants. This is particularly true because there can be no comparative fault lodged against plaintiff. The New Jersey Supreme Court precludes defendant Khebzou from asserting any comparative fault in this case because Tracy was incapable of exercising reasonable self-care at the time of the

injury. See Cowan v. Doering, 111 N.J. 451, 467 (1988); Tobia v. Cooper Medical Center, 136 N.J. 335, 338, 347 (1994)(no comparative fault when patient elderly, infirm, or incapacitated)

Any use or suggestion of intoxication could only be for the improper purpose of suggesting fault on the part of Tracy when neither contributory nor comparative negligence is an element in any claim in this case, or to prejudice the jury against her for drinking. See Straley v. U.S., 887 F. Supp. 728 (D.N.J. 1995)(evidence of alcohol consumption is inadmissible absent evidence indicating actual impairment and excluding evidence because it was more prejudicial than probative)

The use of the word "body" in testimony to refer to Tracy at the marina must be monitored and restricted because whether Tracy was dead at the time defendants were at the marina is disputed. She should be referred to as a "female" or an "individual" in testimony as at the time her name was unknown.

The use of the description of any defense witness testifying about medical issues as "independent" or "independent medical examiner" or any related description and to bar any argument using the same terminology.

F.  **Defendants Are Barred By Summary Judgment From Blaming Sea Isle City Police in an Empty Chair Defense**

Summary judgment rulings are the "law of the case" which settle the question for all subsequent stages of the suit. In essence the Court has found Sea

Isle City police not at fault. Thus if Medic Senisch blames Sea Isle City police for his not accessing the patient, that is an issue decided. In fact, Sea Isle City police officer Harold Boyer at deposition denied barring the medics, noting in effect, they were more experienced than he was and if they had asked they could have approached Tracy.

    G.    **Defense Expert Zafren is Not A Trained Pathologist and Cannot Speculate About "Lividity" or Whether Death by Hypothermia is Painful**

Ken Zafren, MD is an emergency physician with special expertise in hypothermia, he proffers no training in pathology. The portion of his opinion pondering "lividity" and that it means Tracy was deceased, has no scientific foundation, it is speculative and any such testimony must be barred from this witness. Such speculation by an unqualfied expert is not helpful to the jury and violates Fed. R. Civ. P. 702, Daubert and its progeny.

Similarly, his rank speculation about what he has heard about death from hypothermia being, in essence, painless, must be barred. He does not address any physical manifestions of stress and is not a pathologist in any event. He does not claim to be an expert who can opine about the pain of death on any scientific or objective basis. This testimony must be barred.

    H.    **Pennsylvania Has a Greater Interest in the Survival Claim and Damages Should Be Measured Under Pennsylvania Law**

Conflict exists between the Pennsylvania Survival Act and the New Jersey Survival Act with regard to the damages that an estate administrator is allowed to recover. Pursuant to 20 Pa. C.S. § 3371 and 42 Pa. C. S. § 8302, the administrator can recover for the Estate the decedent's lost prospective net earnings, in addition to his or her pain and suffering, whereas N.J. Stat. Ann. § 2A:15-3 allows recovery only for the decedent's pain and suffering. Because such a conflict exists, determination of which statute applies in a survivor action involving Pennsylvania and New Jersey residents depends upon which state has the most significant relationship to the parties and to the accident underlying the suit and, significantly, whether application of the policies of the situs state will be frustrated by the application of the foreign law. Lebegern v. Forman, 471 F.3d 424 (3d Cir. 2006)(car accident in New Jersey between New Jersey driver allegedly at fault and Pennsylvania driver, Pennsylvania citizen killed).

Because New Jersey and Pennsylvania survival laws differ on the scope of damages, there is a conflict between the laws of the two interested jurisdictions, this is only the first prong. It triggers the second prong of the governmental interest test, the determination of the policies underlying each state's laws and whether those policies are implicated by applying the relevant state's law to the particular issue. Lebegern ultimately decided in that case that New Jersey's

survival statute was designed to protect those that naturally would benefit from it, that is, New Jersey defendants.

<u>Lebegern</u> held that while the legislative intent of the New Jersey survival law was sparse and vague, it could find that the law was meant to benefit those it benefitted, that is, New Jersey defendants exposed to the potential of another state's law on damages.  <u>Lebegern</u> found that New Jersey's interest in the survival claim trumped Pennsylvania's interest in protecting its decedent citizens and estates because New Jersey's law focused on the protection of defendants in New Jersey from such damage claims.

On the facts of the case at bar however, defendants, a New Jersey licensed doctor and New Jersey licensed rescue personnel, failed to protect a Pennsylvania resident from their deficient affirmative acts as they violated New Jersey law they were directed to uphold by their professions.  That New Jersey law meant to ensure that only dead individuals are pronounced dead.  Defendants' jobs task them with preserving life.  Pennsylvania's interest on the facts of this case in protecting its decedent citizens and estates from a New Jersey defendant failing a state mandated duty, trumps New Jersey's interest in protecting these New Jersey defendants from Pennsylvania damage claims.  All the cases found in research were about individual defendants committing various negligent acts who were not tasked by the State of New Jersey with the heavy burden of responsibility at issue

here. Most of the cases were auto accident cases, which are different in kind. The analysis in <u>Lebegern</u> did not focus on official acts by actors tasked by New Jersey to perform.

The Estate of Tracy Hottenstein thus has a greater interest in recovering fully under the laws of Pennsylvania than defendants have in limiting the Estate's recovery under New Jersey law. This is particularly so because the pronouncement of death is of interest to both states and where a New Jersey defendant who is a licensed professional wrongly pronounced a Pennsylvania plaintiff dead, the interests of Pennsylvania in its decedent's Estate is primary. The facts of this case are different in kind from the numerous tort cases analyzed subsequent to <u>Lebegern</u>. As set forth above, in <u>Lebegern</u> the appeals court opinion was based upon the greater interest New Jersey has in protecting defendants. On the facts of this case, it is highly unlikely that New Jersey has an interest in protecting a medical professional who fails to follow New Jersey's pronouncement of death statutes and as a result pronounces a living person dead.

Plaintiff preserves the issue that Pennsylvania damages law should be used to calculate damages for the Survival Action claims under a conflict of laws analysis.

## I.  Use of Experts

Federal Rule of Civil Procedure 26(a)(2)(B) is very clear that an expert must supply a report for the opinions he will present.  The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them...

In this case the defendants' pretrial memo indicates they are calling as witnesses experts they did not hire.  If a defendant has not proffered a report that complies with Rule 26, the expert testimony is barred. No report has been issued for any defendant by any expert if the expect was not hired by that party.  Under the Rules, defendants are limited to only the experts each hired and the testimony is limited to only the reports produced by each expert.  The jury must be cautioned as to which defendant an expert's testimony applies.

Respectfully submitted,

*/s/ Lynanne B. Wescott*

Lynanne B. Wescott

Dated:     September 4, 2015

CERTIFICATE OF SERVICE

       I, Lynanne B. Wescott, hereby certify that I served the foregoing by ECF Rules on the following counsel:

Chris Wolk, Esquire
Blumberg and Wolk, LLC
PO Box 68
Woodbury, NJ   08096

Peter Sarkos, Esquire
Fox Rothschild LLP
Midtown Building, Suite 400
1301 Atlantic Avenue
Atlantic City, NJ   08401

                                      _____s/_____
                                      Lynanne B. Wescott

Dated:      September 4, 2015